UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**FILED**

'03 NOV 24  PM 12: 04

U.S. DISTRICT COURT
N.D. OF ALABAMA



ESTHER LARGE,                          )
                                       )
      **Plaintiff,**                 )
                                       )
**vs.**                                )       Civil Action No. CV-03-S-1276-S
                                       )
STATE OF ALABAMA                       )
DEPARTMENT OF HUMAN,                   )              **ENTERED**
RESOURCES, *et al.,*                   )
                                       )              '' 2 4 '''
      **Defendants.**                )

## MEMORANDUM OPINION

Plaintiff, Esther Large, commenced this action on May 23, 2003, naming as defendants to her claims the State of Alabama Department of Human Resources ("Alabama DHR") and Blount County, Alabama, Department of Human Resources ("Blount DHR"), both of which she alleges are her employers; John James, the Director of Blount DHR; Henrietta Ellis, the Program Supervisor at Blount DHR and plaintiff's direct supervisor; and, Rex Murphree, an employee of Blount DHR who also supervised plaintiff.[1]  Plaintiff sued all individual defendants in both their individual and official capacities.[2]

Plaintiff's complaint included claims against defendants under 42 U.S.C. § 1983 for subjecting her to a hostile working environment, for discriminating against her based upon her race (African-American), color, and/or sex,[3] and for retaliating against her for filing a

---

[1] *See* complaint (doc. no. 1).

[2] *Id.* at ¶¶ 5-7.

[3] Plaintiff's discrimination claim is based solely on defendants' actions in "refusing to promote her and dissuading her from seeking promotions." *Id.* at ¶ 17.

charge of discrimination with the Equal Employment Opportunity Commission.[4] Defendants

collectively filed a motion to dismiss,[5] and plaintiff filed a response.[6] Defendants also filed

a motion to stay discovery and to postpone the parties' Rule 26(f) planning meeting pending

a ruling on the motion to dismiss.[7]

## I. STATEMENT OF FACTS

Plaintiff alleges that she has been employed by Blount DHR since 1982 in the position

of Social Worker I, and that she enjoys an impeccable work record.[8] Plaintiff further states

that, in 1999, she applied and interviewed for a promotion to the Quality Assurance

Coordinator/Resource Development position ("QACRD") at Blount DHR, a position created

to provide protective services to children.[9] Plaintiff contends that, despite her extensive

experience in working with children, the QACRD position was awarded to defendant

Murphree, a white male who had less seniority and less experience than she did.[10]

---

[4]*See id.* at ¶¶ 16-19. Plaintiff's retaliation claim encompasses allegations of being discriminatorily denied promotions, and of being subjected to a racially and sexually hostile working environment.

[5]Doc. no. 8.

[6]Doc. no. 11. A copy of plaintiff's EEOC charge, along with an accompanying affidavit, is appended to the motion to dismiss. Defendant urges the court to consider the charge, without converting the motion to dismiss to a motion for summary judgment. *See* Fed. R. Civ. P. 12(b) (providing that if, during the ruling on a motion to dismiss, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56"). Plaintiff contends that the court cannot consider the charge without converting the motion to dismiss to a motion for summary judgment. It is not necessary to evaluate the strengths of either party's argument, however, because it is not necessary to consider the EEOC charge itself. Rather, the court need only consider the allegations in plaintiff's complaint that she filed the EEOC charge in its ruling on the merits of the motion to dismiss.

[7]Doc. no. 12.

[8]Complaint at ¶ 9.

[9]*Id.* at ¶ 10.

[10]*Id.*

Plaintiff applied for another promotion in May of 2001, this time to the Service Supervisor I position.[11]  The position also was awarded to Murphree, allegedly because of his experience in the QACRD position.[12]  After Murphree accepted the Service Supervisor I position, the QACRD position again became open.[13]  Plaintiff alleges that defendants James and Ellis knew she was interested in ultimately being promoted to a Service Supervisor I position, and they consequently attempted to dissuade her from applying for the vacant QACRD position by informing her that it could not be upgraded to the level of Service Supervisor I.[14]  Plaintiff states that she chose not to apply for the vacant QACRD position because of those representations.[15]

Plaintiff alleges that, "[o]nce Ellis and James were satisfied that [she] would not be an applicant for the Quality Assurance Position," James announced that the QACRD position actually *could be upgraded* to a Service Supervisor I level.[16]  The position was awarded to Cheryl Helton, a white female who also allegedly had less seniority than plaintiff in the Blount DHR system.[17]  After the position had been awarded to Helton, plaintiff was allowed to go through the interview process for the position, but the position was again awarded to Helton.[18]  Plaintiff states that, in response to her inquiries as to why she had been denied the

---

[11]*Id.* at ¶ 11.
[12]*Id.*
[13]*Id.* at ¶ 12.
[14]*Id.*
[15]*Id.*
[16]*Id.* at ¶ 13.
[17]*Id.*
[18]*Id.*

promotions, she discovered that Ellis had stated to other employees that "Blount County was not ready for a black female in the Service Supervisor I position."[19]

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission during October of 2001.[20]  She alleges that, in retaliation for filing the charge, she subsequently was "subjected to unfair criticism of her work and undeserved negative performance reviews."[21]  Plaintiff also contends that defendants James, Ellis, and Murphree have "improperly altered information and ratings" on her performance reviews.[22]  Finally, plaintiff alleges that, "in an effort to force [her] to resign and discredit her in the community, the defendants have engaged in a pattern of 'manufacturing' evidence of [her] alleged poor work performance and insubordination."[23]

According to plaintiff, as a result of defendants' conduct, her "right to Equal Protection, as secured by the Fourteenth Amendment of the United States, has been violated."[24]  Plaintiff asks for declaratory relief under 42 U.S.C. § 1983 that the defendants "have violated and continue to violate [her rights]";[25] injunctive relief to permanently prevent the defendants from violating her rights; damages "to make [her] whole," including back pay, front pay, the reasonable value of all benefits she lost, and nominal, compensatory, punitive,

---

[19]*Id.*

[20]*Id.*

[21]*Id.* at ¶ 14.

[22]*Id.*

[23]*Id.* at ¶ 15.

[24]*Id.* at ¶ 18.

[25]The court interprets plaintiff's request for declaratory relief as having both a retrospective aspect and a prospective aspect.

and liquidated damages; and costs and attorney fees.[26]

## II. MOTION TO DISMISS STANDARD

The Federal Rules of Civil Procedure require only that a complaint contain a "'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) (quoting Fed. R. Civ. P. 8(a)(2)).[27] Consequently, a complaint should not be dismissed for failing to state a claim upon which relief can be granted, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley*, 355 U.S. at 45-46, 78 S. Ct. at

[26]*Id.* at § V (Prayer for Relief). Plaintiff's claim for liquidated damages should be dismissed because such damages are not recoverable under § 1983. *See Morgado v. Birmingham-Jefferson County Civil Defense Corps,* 706 F.2d 1184, 1189-90 (11th Cir. 1983) ("Section 1983 does not address liquidated damages expressly, as does the Equal Pay Act."); *Lai v. City and County of Honolulu,* 749 F.2d 588, 590 (9th Cir. 1984) ("Section 1983 does not impose . . . liquidated damages . . . .").

[27] With but few exceptions (fraud claims being one, *see* Fed. R. Civ. P. (9)(b)), there are only three requirements for pleading a claim in a federal action: "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . ., (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed. R. Civ. P. 8(a). "There are two other provisions of Rule 8 that are pertinent: 'Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading are required.' Fed. R. Civ. P. 8(e)(1); and 'All pleadings shall be so construed as to do substantial justice.' Fed. R. Civ. P. 8(f)." *Gorski v. New Hampshire Dept. of Corrections*, 290 F.3d 466, 473 n.5 (1st Cir. 2002).

As the Eleventh Circuit observed in *Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364 (11th Cir. 1997),

> [t]he purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of the statement of [a plaintiff's] claim for relief. It is read alongside Fed.R.Civ.P. 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The rule is not designed to strike inartistic pleadings or to provide a more definite statement to answer an apparent ambiguity, and the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto. . . .

*Id.* at 1368-69 (citation omitted); *see also Conley v. Gibson*, 355 U.S. 41, 47-48, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.").

102.[28]

When ruling on a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true, and construe them in the light most favorable to the non-moving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984); *see also, e.g., Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir. 1997); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983). Further, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks*, 116 F.3d at 1369 (emphasis in original) (citation omitted).

Thus, the threshold requirements for a complaint to survive a Rule 12(b)(6) motion to dismiss are "exceedingly low." *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir. 1985). Such motions accordingly are "viewed with disfavor and rarely granted." *Brooks*, 116 F.3d at 1369 (citing *Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969), and *International Erectors, Inc. v. Wilhoit Steel Erectors & Rental Service*, 400 F.2d 465, 471

---

[28] *See also, e.g., Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984) (holding that a complaint should be dismissed for failure to state a claim "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations" of the plaintiff's complaint); *Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc) (quoting *Conley*, 355 U.S. at 45-46, 78 S. Ct. at 102); *Magluta v. Samples*, 256 F.3d 1282, 1282 (11th Cir. 2001) (same) *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992) ("A complaint may not be dismissed unless the plaintiff can prove no set of facts which would entitle him to relief."); *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir. 1988) ("[T]he 'accepted rule' for appraising the sufficiency of a complaint is 'that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'") (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957)), *reh'g denied*, 840 F.2d 25, *cert. denied*, 486 U.S. 1055, 108 S. Ct. 2822, 100 L. Ed. 2d 923 (1988); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986) (same).

(5th Cir. 1968)).  Even so,

> the complaint must state a cause of action sufficient to affirmatively show the plaintiff is entitled to relief, for
>
>> [i]t is not enough, to indicate merely that the plaintiff has a grievance but sufficient detail must be given so that the defendant, and the Court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some legal basis for recovery.

*Fullman v. Graddick*, 739 F.2d 553, 556 (11th Cir. 1984) (quoting 2A J. Moore & J. Lucas,

*Moore's Federal Practice* ¶ 8.13, at 8-118 (2d ed. 1984)).

A complaint also is subject to dismissal under Rule 12(b)(6), for failure to state a

claim upon which relief can be granted, "when its allegations — on their face — show that

an affirmative defense bars recovery on the claim." *Marsh v. Butler County*, 268 F.3d 1014,

1022 (11th Cir. 2001) (en banc) (discussing qualified immunity defense to § 1983 claim)

(citing *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir.1984),

*vacated on petition for rehearing, reinstated by* 764 F.2d 1400 (11th Cir.1985) (saying that

complaint essentially is "self-defeating" when claim is adequately stated but includes matters

of avoidance that preclude pleader's ability to recover, because plaintiff's "own allegations

show that the defense exists")); *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir.1981) (saying

that affirmative defense alleging failure to bring Title VII claim to EEOC in timely fashion

was properly asserted in 12(b)(6) motion to dismiss); *Kincheloe v. Farmer*, 214 F.2d 604,

605 (7th Cir.1954) (when "allegations of [plaintiff's] complaint erected [the affirmative

defense] . . . it was his duty in order to extricate himself therefrom to plead any exceptions

upon which he relied"); *Larter & Sons v. Dinkler Hotels Co.*, 199 F.2d 854, 855 (5th

Cir.1952) (holding that affirmative defense of res judicata can be raised properly and decided in 12(b)(6) motion)).

### III. DISCUSSION

**A.    Eleventh Amendment Immunity**

Defendants contend that plaintiff's claims against Alabama DHR and Blount DHR, as well as her claims against defendants James, Ellis, and Murphree in their official capacities, are barred by the Eleventh Amendment to the United States Constitution.[29]

**1.    Framework of Eleventh Amendment immunity**

The Eleventh Amendment limits the power of federal courts to hear suits instituted by private litigants against non-consenting states.  The Amendment provides that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

The Supreme Court long ago "extended the Amendment's applicability to suits by citizens against their own States." *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 363, 121 S. Ct. 955, 962, 148 L. Ed. 2d 866 (2001)[30] (citing, *inter alia, Hans*

---

[29]Motion to dismiss at 5.

[30] In *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001), the Supreme Court held that Congress did not validly abrogate the states' sovereign immunity to suits by private individuals under the Americans with Disabilities Act of 1990 (ADA) and, accordingly, such suits are barred by the Eleventh Amendment. *See also Kimel v. Florida Board of Regents*, 528 U.S. 62, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000) (holding that Congress did not validly abrogate the states' sovereign immunity to suits by private individuals under the Age Discrimination in Employment Act of 1967 (ADEA) and, accordingly, such suits also are barred by the Eleventh Amendment).

*v. Louisiana*, 134 U.S. 1, 13-15, 10 S. Ct. 504, 506-07, 33 L. Ed. 842 (1890)[31]); *see also*

*Lapides v. Board of Regents*, 251 F.3d 1372, 1374 (11th Cir. 2001) ("It is well established,

though not expressly stated in the Constitution, that the Eleventh Amendment also prohibits

a state from being sued by its own citizens.") (citing *Hans*).  That is true even when the

citizen's claim is based upon a federal statute, and is filed in a state court, rather than a

federal forum.  *E.g.*, *Alden v. Maine*, 527 U.S. 706, 119 S. Ct. 2240, 144 L. Ed. 2d 636

(1999) (holding that state employees could not subject a non-consenting state to suit in that

state's own court system to recover damages for violation of the overtime provisions of the

Fair Labor Standards Act).

In sum, Eleventh Amendment jurisprudence dictates that, subject to some exceptions,

"nonconsenting States may not be sued by private individuals in federal court." *Garrett*, 531

U.S. at 363, 121 S. Ct. at 962 (citing *Kimel v. Florida Board of Regents*, 528 U.S. 62, 73, 120

S. Ct. 631, 640, 145 L. Ed. 2d 522 (2000) ("[T]he Constitution does not provide for federal

jurisdiction over suits against nonconsenting States.").

### 2. Alabama DHR and Blount DHR are "arms of the state" for Eleventh Amendment purposes

The Eleventh Amendment shields not only states and state officials sued in an official

capacity from federal court actions, but also "state instrumentalities," *Regents of the*

*University of California v, Doe*, 519 U.S. 425, 429, 117 S. Ct. 900, 903, 137 L. Ed. 2d 55

---

[31] In *Hans v. Louisiana*, the Supreme Court held that the doctrine of sovereign immunity barred a citizen from suing his own State in federal court, even when the basis of his claim was a federal question arising under the Constitution and laws of the United States. *See Alden v. Maine*, 527 U.S. 706, 727, 119 S. Ct. 2240, 2253, 144 L. Ed. 2d 636 (1999).

(1997), and other "arm[s] of the state." *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 280, 97 S. Ct. 568, 573, 50 L. Ed. 2d 471 (1977); *see also Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908, 79 L. Ed. 2d 67 (1984) (holding that, "in the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment").

To determine whether a particular entity is an "arm of the state" for Eleventh Amendment purposes, the court must look to state law. *See Brown v. East Central Health District*, 752 F.2d 615, 617 (11th Cir. 1985). Specifically, the court should consider: "(1) how state law defines the entity in question; (2) what degree of control the state maintains over the entity; (3) where funds for the entity are derived; and (4) who is responsible for judgment against the entity." *Mack v. State of Alabama Department of Human Resources*, 201 F. Supp. 2d 1196, 1207 (M.D. Ala. 2002) (citing *Hufford v. Rodgers*, 912 F.2d 1338, 1341 (11th Cir. 1990)). Applying the above factors, other district courts within this state have recognized that both the Alabama DHR and other county Departments of Human Resources within Alabama are state agencies which enjoy Eleventh Amendment protection. *See Mack*, 201 F. Supp. 2d at 1207 ("The court finds that insofar as the County Board [of Human Resources] is established under the umbrella of the [Alabama DHR] pursuant to state statute and that its internal practices are mandated by the State Board, it is a state agency and is not subject to suit under Section 1983."); *Ross v. Alabama*, 893 F. Supp. 1545, 1550 (M.D. Ala. 1995) ("By statute, the Houston County DHR is a division of the State Department of

Human Resources and operates under its discretion.  Thus, the court concludes that the Houston County DHR is a state agency for purposes of the Eleventh Amendment.") (internal citations omitted).  Even plaintiff, in her complaint, states that Alabama DHR and Blount DHR are "agencies of the State of Alabama . . . ."[32]

Nonetheless, plaintiff argues that Alabama DHR and Blount DHR are not entitled to Eleventh Amendment immunity because they "can pay for [a] judgment out of [their] own funds, and not those of the state."[33]  Plaintiff asserts that both Alabama DHR and Blount DHR receive federal, as well as state, funding; that both entities likely receive funding from private gifts and bequests; and that Blount DHR may receive money directly from Blount County, as well as from cities and municipalities within the county.[34]  Plaintiff bases her argument on the Eleventh Circuit's decision in *Travelers Indemnity Company v. School Board of Dade County, Florida,* 666 F.2d 505 (11th Cir. 1982).  In *Travelers,* the Court held that a county school board did not enjoy Eleventh Amendment immunity when there was nothing "that would prevent the county board of education from satisfying a judgment in th[e] lawsuit out of county funds not in any way derived from the state of Florida."  *Id.* at 509.  The Court emphasized that "Eleventh Amendment protection is available only if satisfaction of the judgment sought against the state 'agency' must under all circumstances,

---

[32]Complaint at ¶ 4.

[33]Response to motion to dismiss at 3.

[34]*Id.* at 4.  Plaintiff attached ,as an exhibit to her response, a copy of the 1998 fiscal report for Alabama DHR, showing the sources of the department's funding. *See id.* at Exhibit 1.  Plaintiff contends that, if the court considers the exhibit, the motion to dismiss should be converted to a motion for summary judgment. *Id.* at 2.  However, the court finds it unnecessary to consider the exhibit; therefore, it is also unnecessary to convert the motion to one for summary judgment.

be paid out of state funds." *Id.*

Despite plaintiff's assertions, the holding in *Travelers* is distinguishable from the present case. The Court in *Travelers* specifically stated that the issue before it was as follows:

> If a subordinate political entity of a state *which is not normally considered a part of the state for Eleventh Amendment purposes* has property and means of its own with which it can respond to a judgment, does it, nevertheless, have Eleventh Amendment protection, if in fact, the suit against it arises out of a contract for the completion of which the state has furnished funds?"

*Id.* at 507 (emphasis supplied). The Court emphasized "the basic proposition that ordinarily boards of education in Florida are not qua boards of education protected from suit by the Eleventh Amendment." *Id.* In contrast, as stated above, Alabama DHR and Blount DHR *are* normally considered state agencies for Eleventh Amendment purposes. *See Mack,* 201 F. Supp. 2d at 1207; *Ross,* 893 F. Supp. at 1550 Thus, both entities are protected by the Eleventh Amendment as a general rule, regardless of whether they receive *all* their funding directly from state sources.

### 3. The Eleventh Amendment also protects the individual defendants sued in their official capacities

The Eleventh Amendment also shields state officials sued in an "official capacity" from suit in federal court. That is because an action for money damages against a state official in his or her official capacity is tantamount to a suit against the state itself and, absent waiver or consent, the Eleventh Amendment bar remains intact. *See McMillian v. Monroe County,* 520 U.S. 781, 785 n.2, 117 S. Ct. 1734, 1737 n. 2, 138 L. Ed. 2d 1 (1997); *Kentucky*

*v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985).

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself.

*Will v. Michigan Department of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989); *see also Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999) ("[T]he Eleventh Amendment prohibits suits against state officials where the state is, in fact, the real party in interest.") (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-02, 104 S. Ct. 900, 908-09, 79 L. Ed. 2d 67 (1984)); *Lassiter v. Alabama A&M University*, 3 F.3d 1482, 1485 (11th Cir. 1993) ("Where the defendant is an entity other than the state, the suit may nonetheless be barred where the state is the 'real party in interest.'").

> For example, if a lawsuit seeks to order the state officer to pay funds directly from the state treasury for the wrongful acts of the state, then the state is the real party in interest and the Eleventh Amendment bars the suit.

*Summit Medical Associates*, 180 F.3d at 1336.

The Supreme Court summarized this point in *McMillian v. Monroe County*, saying that

> a suit against a governmental officer "in his official capacity" is the same as a suit "'against [the] entity of which [the] officer is an agent,'" *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985) (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690, n.55, 98 S. Ct. 2018, 2035-2036, n.55, 56 L. Ed. 2d 611 (1978)), and that victory in such an "official-capacity" suit "imposes liability on the entity that [the officer] represents," *Brandon v. Holt*, 469 U.S. 464, 471, 105 S. Ct. 873, 878, 83 L. Ed. 2d 878 (1985).

-13-

*McMillian,* 520 U.S. at 785 n.2, 117 S. Ct. at 1737 n.2; *see also Lassiter,* 3 F.3d at 1485 ("Official capacity actions are deemed to be against the entity of which the officer is an agent.").[35]

When determining the capacity in which a governmental employee is sued, the court looks "at the complaint and the course of proceedings." *Colvin v. McDougall,* 62 F.3d 1316, 1317 (11th Cir. 1995). Plaintiff's complaint specifically states that individual defendants James, Ellis, and Murphree are all sued in both their individual and official capacities.[36] Officials of County Departments of Human Resources within Alabama are considered "state officials" for Eleventh Amendment purposes when they are sued in their official capacities. *See Ross,* 893 F. Supp. at 1550. Accordingly, the Eleventh Amendment shields James, Ellis, and Murphree from plaintiff's claims, subject to the limitation discussed below, insofar as they are sued in their official capacities.

### 4. Eleventh Amendment immunity is limited to retrospective or compensatory relief

The Eleventh Amendment, however, only shields defendants from being held liable for compensatory or retrospective equitable relief. The Supreme Court's seminal decision

---

[35] Note, however, that official capacity actions for prospective injunctive relief are *not* treated as actions against the state. *Kentucky v. Graham,* 473 U.S. 159, 167 n.14, 105 S. Ct. 3099, 3106 n.14, 87 L. Ed. 2d 114 (1985); *Ex parte Young,* 209 U.S. 123, 156, 28 S. Ct. 441, 452, 52 L. Ed. 714 (1908). "The Eleventh Amendment does not insulate official capacity defendants from actions seeking prospective injunctive relief." *Lassiter v. Alabama A & M University,* 3 F.3d 1482, 1485 (11th Cir. 1993) (citing *Wu v. Thomas,* 863 F.2d 1543, 1550 (11th Cir. 1989), and Parker v. Williams, 862 F.2d 1471, 1475 (11th Cir. 1989)). *See also Will v. Michigan Department of State Police,* 491 U.S. 58, 71 n.10, 109 S. Ct. 2304, 2312 n.10, 105 L. Ed. 2d 45 (1989), holding that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'"

[36] *See* complaint at ¶¶ 5-7.

in *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), is the progenitor of a "well-recognized exception" to the rule of Eleventh Amendment immunity: "suits against state officers seeking *prospective* equitable relief to end *continuing* violations of federal law," or "to obtain declaratory relief," are not barred. *Summit Medical Associates*, 180 F.3d at 1336 (emphasis in original) (suit challenging Alabama's Partial-Birth Abortion Ban Act and Abortion of Viable Unborn Child Act). As the Eleventh Circuit has observed,

> [t]he Eleventh Amendment generally does not bar the exercise of the judicial power of the United States where a plaintiff seeks to compel a state officer to comply with federal law. . . .

> Thus, the availability of this doctrine turns, in the first place, on whether the plaintiff seeks *retrospective* or *prospective* relief. As the Supreme Court has explained:

>> *Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation. As we have noted: "Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment."

*Papasan v. Allain*, 478 U.S. 265, 277-78, 106 S. Ct. 2932, 2940, 92 L. Ed. 2d 209 (1986) (quoting *Green v. Mansour*, 474 U.S. 64, 68, 106 S. Ct. 423, 426, 88 L. Ed. 2d 371 (1985)). Therefore, *the Eleventh Amendment bars suits against state officials in federal court seeking retrospective or compensatory relief, but does not generally prohibit suits seeking only prospective injunctive or declaratory relief. See Green*, 474 U.S. at 68, 106 S. Ct. 423. If the prospective relief is the functional equivalent of money damages, however, i.e., "[i]t is measured in terms of a monetary loss resulting from a past breach

-15-

of a legal duty," *Ex parte Young* does not apply. *Edelman*, 415 U.S. [651,] 669, 94 S. Ct. [1347,] 1347, [39 L. Ed. 2d 662 (1974)].

      Because of the important interests of federalism and state sovereignty implicated by *Ex parte Young*, however, the doctrine is not without limitations — indeed, two are relevant to this appeal. First, *the Ex parte Young doctrine applies only to ongoing and continuous violations of federal law. See Papasan*, 478 U.S. at 277-78, 106 S. Ct. at 2940; *Green*, 474 U.S. at 68, 106 S. Ct. at 426. *In other words, a plaintiff may not use the doctrine to adjudicate the legality of past conduct. See Papasan*, 478 U.S. at 277-78, 106 S. Ct. at 2940. This requirement protects states by setting "a minimum threshold for abrogating a state's constitutional immunity." *Booth v. Maryland*, 112 F.3d 139, 142 (4th Cir. 1997), *cert. denied*, 524 U.S. 905, 118 S. Ct. 2063, 141 L. Ed. 2d 140 (1998). Second, in *Idaho v. Coeur d'Alene Tribe*, the Supreme court recently said that *the Ex parte Young doctrine does not apply where the equitable relief sought "implicates special sovereignty interests."* 521 U.S. 261, 281, 117 S. Ct. 2028, 2040, 138 L. Ed. 2d 438 (1997). Thus, if prospective relief would invade a state's sovereignty as much as an award of money damages would, the action would be barred by the Eleventh Amendment.

*Summit Medical Associates*, 180 F.3d at 1336-37 (emphasis added).

      Based on the foregoing, plaintiff's claims for money damages and *retrospective* declaratory relief against Alabama DHR, Blount DHR, and the individual defendants, sued in their official capacities, are barred by the Eleventh Amendment. *See id.* ("In other words, a plaintiff may not use the doctrine to adjudicate the legality of past conduct.") (citing *Papasan*, 478 U.S. at 277-78, 106 S. Ct. at 2940).[37]

---

[37]All of the items of recovery demanded in Paragraph 3 of the Prayer for Relief in plaintiff's complaint are barred, insofar as they are asserted against Alabama DHR, Blount DHR, and the individual defendants, sued in their official capacities. Plaintiff makes it clear that her claims for "declaratory and injunctive relief, back pay, front pay plus (interest), the reasonable value of all benefits lost, as well as nominal, compensatory, punitive and liquidated damages" are compensatory in nature, by asserting that she desires those items of damages "to make [her] whole." *See* complaint at § V, ¶ 3; *see also Edelman,* 415 U.S. at 669, 94 S. Ct. at 1358, 39 L. Ed. 2d 662 (items of recovery that would traditionally be considered equitable in nature are barred by the Eleventh Amendment if, in reality, they serve a compensatory purpose).

Plaintiff may, however, proceed against Alabama DHR, Blount DHR, and the other defendants in their *official* capacities on her claims for *prospective* declaratory and injunctive relief. She may proceed against the individual defendants in their *individual* capacities for all items of recovery, subject to the restrictions discussed below.

## B.   Qualified Immunity on the Retaliation Claim

Defendants allege that they are entitled to qualified immunity on the retaliation claim plaintiff asserted against them in their individual capacities, because there is no clearly established right to be free from retaliation under the Equal Protection Clause of the Fourteenth Amendment.[38]

### 1.   Framework of qualified immunity

The doctrine of qualified immunity protects governmental officials who are sued under 42 U.S.C. § 1983 for money damages in their personal, or "individual," capacities, but only so long as "their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982); *see also, e.g., Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001) (same).

> The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, *see Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 3038, 97 L. Ed. 2d 523 (1987), protecting from suit "all but the plainly incompetent or one who is knowingly violating the federal law." *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001). Because qualified immunity is a defense not only from liability, but also from suit, it is

---

[38]Motion to dismiss at 9-11.

> "important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998) (citation omitted).
>
>    In order to receive qualified immunity, the public official "must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988)).  If the defendant was not acting within his discretionary authority, he is ineligible for the benefit of qualified immunity . . . .

*Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002); *see also, e.g., Chesser v. Sparks*, 248 F.3d 1117, 1121-22 (11th Cir. 2001); *Lassiter v. Alabama A & M University Board of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc).

When a defendant establishes that he was acting within his discretionary authority in performing a contested act, "the burden shifts *to the plaintiff* to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194 (emphasis supplied); *see also, e.g., Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) ("Once an officer or official has raised the defense of qualified immunity, the burden of persuasion as to that issue is on the plaintiff.") (citing *Suissa v. Fulton County*, 74 F.3d 266, 269 (11th Cir. 1996); *Barnette v. Folmar*, 64 F.3d 598, 600 (11th Cir. 1995); *Lassiter*, 28 F.3d at 1150 n.3 (holding that, once the qualified immunity defense is raised, it is *the plaintiff* who "bear[s] the burden of showing that the federal 'rights' allegedly violated were 'clearly established'") (quoting *Barts v. Joyner*, 865 F.2d 1187, 1190 (11th Cir. 1989)); *see also Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S. Ct. 2806, 2816, 86 L. Ed. 2d 411 (1985); *Busby*, 931 F.2d at 773 ("The plaintiff has the burden of showing that the defendant violated clearly established constitutional rights.").

### 2. No clearly established right to be free from retaliation exists under the Equal Protection Clause

The only claim to which defendants assert a qualified immunity defense is plaintiff's retaliation claim. Although the right to be free from retaliation exists under Title VII and the First Amendment, it is well settled that "no clearly established right exists under the *equal protection* clause to be free from retaliation." *Ratliff v. DeKalb County,* 62 F.3d 338, 340 (11th Cir. 1995) (emphasis in original); *see also Watkins v. Bowden,* 105 F.3d 1344, 1354-55 (11th Cir. 1997). Further, because plaintiff seems not to contest defendant's assertion of qualified immunity on the retaliation claim, she has not met her burden of proving that defendants violated a clearly established right. Therefore, plaintiff's claims against the individual defendants, in their individual capacities, for subjecting her to a hostile working environment, and for denying her promotions and the opportunity to apply for promotions in retaliation for her act of filing an EEOC charge are barred by the doctrine of qualified immunity. *See Ratliff,* 62 F.3d at 341 (reversing the district court's denial of qualified immunity on the plaintiff's Equal Protection retaliation claim because no clearly established right exists under the Equal Protection Clause to be free from retaliation).

Plaintiff correctly points out that her hostile working environment claim is not based solely on retaliation.[39] Plaintiff also alleges that "defendants have created a hostile work environment *based on the plaintiff's race, color, and sex.*"[40] Plaintiff may proceed on those hostile working environment claims which are *not* based on retaliation, subject to the

---

[39]Response to motion to dismiss at 7.

[40]Complaint at ¶ 17 (emphasis supplied).

Eleventh Amendment immunity restrictions set forth above.  The court notes, however, that plaintiff specifically phrases her claims that defendants "subjected [her] to unfair criticism of her work and undeserved negative performance reviews," and that defendants "improperly altered information and ratings on [her] performance reviews *after* said reviews were approved by the State Department of Human Resources," in language that usually is associated with a retaliation claim.[41]  Thus, all claims based on those facts must be viewed as retaliation claims, and are barred by the doctrine of qualified immunity, insofar as they are asserted against defendants in their individual capacities.

Finally, "[q]ualified immunity does not shield against equitable claims." *Burrell v. Board of Trustees of Georgia Military College,* 970 F.2d 785, 787 (11th Cir. 1992) (citing *Marx v. Gumbinner,* 855 F.2d 783, 787 (11th Cir. 1988)).  Therefore, even though qualified immunity bars plaintiff's recovery of money damages on her retaliation claim against the individual defendants in their individual capacities, plaintiff still may obtain injunctive and declaratory relief on her retaliation claim against the individual defendants in their individual capacities.

C.      **The Statute of Limitations and the "Continuing Violation Doctrine"**

Defendants next argue that plaintiff's claim against them for failing to promote her to the QACRD position in 1999 is barred by the applicable statute of limitations.  In Alabama, an action under 42 U.S.C. § 1983 must be filed within two years of the date on which the alleged unlawful employment practice occurred.  *Lufkin v. McCallum,* 956 F.2d

---

[41]*See id.* at ¶ 14 (emphasis in original).

1104, 1105 (11th Cir. 1992).  Plaintiff did not file her suit until May 29, 2003, much longer than two years after defendants allegedly failed to promote her in 1999.  Nonetheless, plaintiff contends that her 1999 failure-to-promote claim is timely, because defendants' allegedly discriminatory treatment of her constitutes a "continuing violation."

### 1.    The "continuing violation doctrine"

The so-called "continuing violation doctrine," which allows a plaintiff to "revive," or in other words make actionable, time-barred acts of discrimination by connecting them to discriminatory acts falling within the applicable limitations period, provides one equitable exception to the statute of limitations.

Until recently, case law on the subject unquestionably was "inconsistent and confusing." *Berry v. Board of Supervisors of L.S.U.*, 715 F.2d 971, 979 n.11 (5th Cir. 1983) (quoting *Dumas v. Town of Mount Vernon*, 612 F.2d 974, 977 (5th Cir. 1980)).  Then, in 2002, the Supreme Court addressed the viability of the "continuing violation" theory in *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002).  Shortly thereafter, the Eleventh Circuit elucidated the *Morgan* decision in *Shields v. Fort James Corporation*, 305 F.3d 1280 (11th Cir. 2002), saying:

> The Court issued a twofold ruling.  First, it held that "*discrete discriminatory acts* [such as termination, failure to promote, denial of transfer, or refusal to hire] are not actionable if time barred, *even when they are related to acts alleged in timely filed charges*." *Morgan*, 122 S.Ct. at 2072.  Second, . . . the Court held that *a hostile work environment claim should be reviewed in its entirety*, so long as one of the events comprising it fell within the statute of limitations.  Specifically, the Court emphasized:
>
> A hostile work environment claim is comprised of a series of separate

acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). . . . It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

In making this ruling, the Court essentially rejected the "continuing violation doctrine" and simplified the law by allowing courts to view allegations of hostile work environment as "a single unlawful employment practice." Put simply, if the smallest portion of that "practice" occurred within the limitations time period, then the court should consider it as a whole.

*Shields*, 305 F.3d at 1281-82 (bracketed alteration in original) (emphasis supplied) (quoting

*Morgan*, 536 U.S. at 116-17, 122 S. Ct. at 2074-75).

### 2.   Defendants' failure to promote plaintiff in 1999 does not constitute a continuing violation

Under the *Morgan* framework, it is clear that plaintiff's claim against defendants for

failing to promote her to the QACRD position in 1999 — a "discrete discriminatory act[]"

— does not constitute a continuing violation, and that it therefore is barred by the applicable

statute of limitations. In *Morgan*, the Supreme Court held that the failure to promote a

plaintiff to a desired position is a "discrete act" that is "easy to identify." *Morgan*, 536 U.S.

at 114, 122 S. Ct. at 2073, 153 L. Ed. 2d 106.[42]   Plaintiff cannot make her claim for

defendants' discrete act of failing to promote her in 1999 timely simply by connecting it to

---

[42]*Morgan* involved the plaintiff's failure to file a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The *Morgan* framework, however, is not limited in application to EEOC charges. In fact, the Eleventh Circuit has applied the principles behind the *Morgan* decision to a plaintiff's failure to file a § 1983 claim, based on a Fourteenth Amendment violation, within the applicable statute of limitations period. *City of Hialeah, Florida v. Rojas*, 31 F.3d 1096, 1103 (11th Cir. 2002).

other, allegedly-discriminatory, discrete acts occurring within the applicable statute of limitations. *See Morgan,* 536 U.S. at 113, 122 S. Ct. at 2072, 153 L. Ed. 2d 1061 (emphasizing that time-barred discriminatory acts are not actionable, "even when they are related to acts alleged in timely filed charges"). Thus, that aspect of plaintiff's claim is time-barred and due to be dismissed with prejudice.

Nonetheless, the court notes that, even though plaintiff's 1999 failure-to-promote claim is untimely, plaintiff can still use the facts surrounding that claim as "background evidence" to support her other, timely claims, including her claim for being subjected to a hostile working environment. *See Morgan,* 536 U.S. at 113, 122 S. Ct. at 2072, 153 L. Ed. 2d 106. Further, the court notes that plaintiff's hostile working environment claim is not time-barred because at least one of the "act[s] contributing to the claim occur[ed] within the filing period." *See id.* at 116-17, 122 S. Ct. at 2074-75; *Shields,* 305 F.3d at 1281-82.

## D.    Plaintiff's Claim Against Defendants for Failing to Promote Her to the Service Supervisor I Position in 2001 Should Not Be Dismissed

Next, defendants argue that plaintiff's claim for failing to promote her to the Service Supervisor I position in May 2001 should be dismissed because the facts alleged in that claim do not establish a constitutional violation.[43]  According to defendants, "[p]laintiff does not allege that there was any discrimination in the appointment of Mr. Murphree as a Service Supervisor I in May of 2001, but rather states that he was awarded the position based on his experience in the Quality Assurance position since 1999."[44]  Defendant further asserts that

---

[43]*See* motion to dismiss at 8-9.

[44]*Id.* at 9.

the allegedly discriminatory failure to promote plaintiff in 1999 to the QACRD position "has no legal significance," because plaintiff's claim with regard to that failure to promote was not timely filed.[45]   Thus, defendant asserts, the 1999 incident cannot be considered in evaluating the 2001 incident.

Viewing the allegations of the complaint in the light most favorable to plaintiff, as it must at this motion to dismiss stage, the court must hold that plaintiff has provided *some* set of facts that would support a claim for discrimination regarding her May 2001 failure-to-promote claim. *See Conley,* 355 U.S. at 45-46, 78 S. Ct. at 102. The 2001 claim is not based solely on the factual allegations comprising plaintiff's 1999 failure-to-promote claim. Rather, plaintiff states an independently viable cause of action for discrimination regarding the 2001 incident.   Specifically, plaintiff states that she "has been denied promotions and opportunities to apply for promotions to a Service Supervisor position or higher based on her race, color, and/or sex."[46]   Additionally, plaintiff alleges she was denied promotions, in general, based on defendants' discriminatory motives.[47] These allegations are not narrowly focused on the May 2001 failure to promote, but they are sufficient to survive a motion to dismiss.

Further, and contrary to defendants' assertion, although plaintiff's claim for the 1999 failure to promote is time-barred, the facts surrounding that claim do still carry *some* legal significance. As the court has already held, the fact that plaintiff was not promoted to the

---

[45]*Id.* (quoting *City of Hialeah, Florida,* 311 F.3d at 1102).

[46]Complaint at ¶ 9.

[47]*See id.* at ¶¶ 13, 17.

QACRD position in 1999 can be used as background evidence to support a claim of discrimination for failing to promote her to Service Supervisor I in 2001. Thus, plaintiff's claim against defendants for failing to promote her to Service Supervisor I in 2001 is viable and should not be dismissed.

### E.    Plaintiff States Viable Claims Against Defendant Murphree

Finally, defendants argue that all of plaintiff's claims against defendant Murphree should be dismissed.[48]  Defendants correctly point out that plaintiff's claim for the 1999 failure to promote is time-barred; accordingly, Murphree cannot be held liable for any acts related to that claim. Defendants also argue that Murphree cannot be held liable on the 2001 failure to promote, because plaintiff "has not alleged any discrimination in the May 2001 failure to hire her as a Service Supervisor I."[49]

As stated above, plaintiff *has* stated a viable discrimination claim against defendants on the 2001 failure to promote. Nonetheless, the court agrees with defendants that Murphree should not be held liable for the 2001 incident. Plaintiff has not alleged that Murphree engaged in any discriminatory acts in relation to that failure to promote. Instead, Murphree merely received the promotion that plaintiff wanted. Accordingly, Murphree cannot be held liable for any discrimination related to that decision. Further, plaintiff does not allege that Murphree was involved in the decision to deny her promotion to the Quality Assurance position in 2001. Instead, the only allegedly discriminatory acts related to that promotion

---

[48]Motion to dismiss at 11.
[49]*Id.*

decision were committed by defendants Ellis and James.[50] Thus, Murphrree cannot be held liable for failing to promote plaintiff to the elevated quality assurance position in 2001.

Defendants also allege that Murphree cannot be held liable on plaintiff's retaliation claim, because that claim is barred by the doctrine of qualified immunity.[51] Defendants' argument is correct, but only in part. Qualified immunity *does* bar plaintiff's retaliation claim, but only as it applies to Murphree in his individual capacity, and only insofar as plaintiff seeks money damages under that claim. *See Burrell* 970 F.2d at 787 (citing *Marx*, 855 F.2d at 787). Accordingly, plaintiff may proceed with her retaliation claim, including both its discrimination and its hostile working environment aspects, against Murphree in his individual capacity for all equitable relief, and in his official capacity for prospective declaratory and permanent injunctive relief.[52]

Further, because plaintiff's hostile working environment claim is not barred either by the statute of limitations or by qualified immunity, plaintiff may also proceed against Murphree in his individual capacity on that claim, for both monetary damages and equitable relief. Plaintiff may also proceed with her hostile working environment claim against Murphree in his official capacity, but only for prospective declaratory and permanent injunctive relief, because of Eleventh Amendment immunity restrictions.

---

[50]*See* complaint at ¶ 13.

[51]Motion to dismiss at 11.

[52]Plaintiff's recovery against Murphree, in his official capacity, on the retaliation claim, is limited to prospective declaratory and permanent injunctive relief, because of the principles of Eleventh Amendment immunity.

## IV. CONCLUSION

The court believes a summary of this detailed decision is necessary. As an initial matter, the court notes that plaintiff may not recover liquidated damages from any defendant, on any of her claims. *See Morgado v. Birmingham-Jefferson County Civil Defense Corps*, 706 F.2d 1184, 1189-90 (11th Cir. 1983) ("Section 1983 does not address liquidated damages expressly, as does the Equal Pay Act."); *Lai v. City and County of Honolulu*, 749 F.2d 588, 590 (9th Cir. 1984) ("Section 1983 does not impose . . . liquidated damages . . . .").

### A.     Claims Against Alabama DHR and Blount DHR

All of plaintiff's claims against Alabama DHR and Blount DHR, for retrospective declaratory relief and compensatory damages, are barred by the Eleventh Amendment. Further, all of plaintiff's claims against those defendants based on the failure to promote her to a QACRD position in 1999 are barred by the applicable statute of limitations. Accordingly, plaintiff may proceed against Alabama DHR and Blount DHR only for prospective declaratory and permanent injunctive relief on all of her claims, except the 1999 failure-to-promote claim.

### B.     Claims Against Individual Defendants in Their Official Capacities

All of plaintiff's claims against individual defendants James and Ellis in their official capacities for retrospective declaratory relief and compensatory damages are also barred by the Eleventh Amendment. Further, all of plaintiff's claims against those defendants, based on the failure to promote her to a QACRD position in 1999, are barred by the applicable statute of limitations.

-27-

Accordingly, plaintiff may proceed against James and Ellis in their official capacities for prospective declaratory and permanent injunctive relief on all of her claims, except the 1999 failure-to-promote claim. Plaintiff may proceed against Murphree in his official capacity, but only on her retaliation and hostile working environment claims, and only for prospective declaratory and permanent injunctive relief.

## C.    Claims Against Individual Defendants in Their Individual Capacities

Plaintiff's retaliation claim against all individual defendants[53] in their individual capacities for money damages is barred by the doctrine of qualified immunity. Plaintiff may proceed on her retaliation claim against all individual defendants in their individual capacities for all types of equitable relief. Further, plaintiff may proceed on her hostile working environment claim against all individual defendants in their individual capacities for both money damages and equitable relief.

All of plaintiff's claims against all the individual defendants in their individual capacities, which are related to the failure to promote her to a QACRD position in 1999, are barred by the statute of limitations. Plaintiff may proceed against individual defendants James and Ellis in their individual capacities on all of her discriminatory failure-to-promote claims, except for the 1999 failure to promote. Plaintiff may pursue both money damages and equitable relief against James and Ellis on those failure-to-promote claims. Finally, plaintiff may not proceed against Murphree in his individual capacity on any of her failure-to-promote claims.

---

[53]James, Ellis, *and* Murphree.

-28-

An appropriate order will be entered contemporaneously herewith.

DONE this **24th** day of November, 2003.

_____
United States District Judge